UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JUSTIN JORDAN,
   Plaintiff,

   vs.                         No. 09-1242

CORRECTIONAL OFFICER ANDERSON, et. al,
   Defendants

SUMMARY JUDGMENT ORDER

     This cause is before the court for consideration of the Defendants motions for summary judgment.[d/e 63, 66]

## I. BACKGROUND

     The Plaintiff filed his complaint pursuant to 42 U.S.C. §1983 claiming his constitutional rights were violated at Hill Correctional Center by five Defendants: Correctional Officers Charles Anderson and Brian Duncan; Warden Gerardo Acevedo, Nurse Toni Meldrum and Nurse Janie Turnquist.  The court conducted a merit review hearing on September 25, 2010, and found the Plaintiff had alleged the following claims:

     1) Defendant. Anderson used excessive force in violation of the Eighth Amendment when he kicked, twisted and pulled the Plaintiff's arm on January 24, 2009;
     2) Defendant Acevedo violated the Eighth Amendment based on his failure to train correctional officers which resulted in the widespread practice or custom of using excessive force;
     3) Defendant Duncan violated the Eighth Amendment when he failed to intervene to stop Defendant Anderson's attack;
     4) Defendants Anderson, Acevedo, Duncan, Meldrum and Turnquist violated the Plaintiff's Eighth Amendment rights when they were deliberately indifferent to the Plaintiff's serious medical condition; and,
     5) Defendant Anderson committed the state law tort of Battery, Assault and Intentional Infliction of Emotional Distress.

     The Defendants Acevedo, Anderson, Duncan and Meldrum have filed motions for summary judgment and the Plaintiff has filed a response.

## II. FACTS

     On January 24, 2009, the Plaintiff was in a segregation cell at Hill Correctional Center.

The cell had a food slot or "chuckhole" that was opened for food service. Officers would hand the inmate's food tray through the chuckhole and nurses would follow and hand out medications to those with prescriptions. (Def. Mot, Plain. Depo. p. 49-50). On this particular morning, neither the Plaintiff nor his cellmate were receiving any medications. (Def. Mot, Plain. Depo. p. 50)

The Plaintiff says he was on a lactose diet, but on January 24, 2009, he was mistakenly given a vegan diet tray. The Plaintiff says he was upset about the mistake and began to exchange words with Defendant Anderson. In his deposition, the Plaintiff says he told the officer "you ain't getting this chuckhole back until I get a proper diet tray." (Def. Mot, Plain. Depo. p. 9).

The Plaintiff says the Officer began closing chuckholes and tried to push the Plaintiff's arm back in his cell, but the Plaintiff says that is when he "pushed my arm farther out the chuckhole so he couldn't push my arm back in the chuckhole and close it." (Def. Mot, Plain. Depo. p. 13). The Plaintiff says the Officer continued to try and push his arm back in and finally gave up and tried to close the chuckhole door. The Plaintiff says his arm was injured when the officer tried to close the door. (Def. Mot, Plain. Depo. p. 64-65). The Plaintiff says he would not have taken his arm out of the chuckhole if Officer Anderson asked him to "unless (the officer) got my diet tray." (Def. Mot, Plain. Depo. p. 20).

The Plaintiff says when the incident happened with Defendant Anderson, Defendant Duncan was across the hall and down two or three cells assisting nurses. (Def. Mot, Plain. Depo. p. 20). The Plaintiff says he never asked Defendants Anderson or Duncan if he could see a nurse because the nurses were already in the area. (Def. Mot, Plain. Depo. p. 25-26). The Plaintiff says he told Nurse Toni Meldrum that he needed medical care and she nodded and continued to hand out medications. (Def. Mot, Plain. Depo. p. 79-80). Later on January 24, 2009, the Plaintiff asked to see a crisis team remember. When the officer came to get the Plaintiff from his cell, he refused to leave or speak with a crisis team member. The Plaintiff received a disciplinary ticket as a result. (Def. Mot, Ex. B, Dis. Report).

The Plaintiff says he never submitted a sick call request concerning his injuries. (Def. Mot, Plain. Depo. p. 71) However, the Plaintiff was seen by a registered nurse two days after the incident on January 26, 2009. The nurse observed one half dollar sized abrasion on the Plaintiff's arm and one nickel sized abrasion on his shoulder area. The Plaintiff describes the same injuries in his deposition. The areas were washed with water and antibiotic ointment and bandages were applied. (Def. Memo, Ex. C, Injury Report). On January 31, 2009, the Plaintiff told medical staff he did not need any treatment for his arm. (Def. Memo, Ex. D, Outpatient Progress Note). In his deposition, the Plaintiff says the abrasions healed in about a week and a half. (Def. Mot, Plain. Depo. p. 24-25) The Plaintiff also agreed that he had the type of injury you would receive if you fell off a bike and skinned your knee. (Def. Mot, Plain. Depo. p. 69)

The Plaintiff says he has seen inmates throw items out of chuckholes and attempts to

assault guards through chuckholes. (Def. Mot, Plain. Depo. p. 36).

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56©, the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## IV. ANALYSIS

### A. EXCESSIVE FORCE

Defendant Anderson argues that the Plaintiff cannot demonstrate that he used excessive force against the Plaintiff on January 24, 2009. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Excessive force is force applied "maliciously and sadistically to cause harm," as opposed to force applied "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 5. Relevant factors include the need for force, the relationship between that need and the force applied, the threat reasonably perceived by the defendants, the efforts made to temper the severity of the force employed, and the extent of the prisoner's injury. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), *citing Hudson*, 503 U.S. at 7. Excessive force violations due not include "*de minimus* uses of physical force provided that the use of force is not of a sort 'repugnant to the consceince of mankind.'" *Hudson v McMillian*, 603 U.S. 1, 9 (1997) *quoting Whitley v Albers*, 475 U.S. 312, 327 (1986).

In several cases, courts have considered whether the application of force used in an attempt to remove an inmate's arm from a chuckhole constitutes cruel and unusual punishment in violation of the Constitution. A number of courts have concluded that it does not. *Ford v. Page*, 2002 WL 31818996 at 6 (N.D. Ill, Dec. 13, 2002); *Pickett v Detella*, 163 F.Supp.2d 999, 1004 (N.D. Ill. 2001); *Lebron v Wright*, 2005 WL 731058 at 5 (N.D. Ill. March 29, 2005); *Walker v*

*Ahitow*, 1993 WL 468603 (7th Cir. Nov. 15, 1993); but see *Wilson v. Lee*, 2001 WL 1135900 at 3 (N.D. Ill., Sept 24, 2001)(defendant went beyond reasonable force "since he was simultaneously inflicting pain while preventing [plaintiff] from withdrawing his arm.")

It is clear in the case before the court that the Plaintiff set the events in motion when he told the Officer, he was not removing his arm from his chuckhole until he got the diet tray he wanted. The Plaintiff also admits he saw officers starting to close chuckhole doors. It does not appear the officer asked the Plaintiff to remove his arm, but first tried to push the Plaintiff's arm back. The Plaintiff admits he had no intention of moving his arm until his demands were met. The Plaintiff admits he began to struggle with the officer instead of withdrawing his arm so the chuckhole door could be closed. Officer Anderson was entitled to use some level of force to get the Plaintiff's arm back into his cell.

It is also clear that the injury to the Plaintiff was relatively minor which would support the conclusion that the incident was "at most...a *de minimus* use of force not intended to cause pain." *Lunsford v Bennett,* 17 F.3d 1574, 1582 (7th Cir. 1994); *See also Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir.2001) (swelling, bruising, discoloration, and numbness of inmate's hand constitutes *de minimis* injury that "strongly suggests" that the force applied was *de minimis)*; *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir.2000) (bruises suffered by inmate after being shoved into wall by guard were *de minimis*); *Lebron,* 2005 WL 731058 at 5(after struggle at chuckhole, plaintiff's injuries were minor including a swollen arm and scrapes requiring ice and Tylenol). Based on the facts before the court, the Plaintiff cannot demonstrate force "repugnant to the conscience of mankind."*Hudson,*, 603 U.S. at 9. The motion for summary judgment as to Defendant Anderson is granted.

The Plaintiff also cannot demonstrate that Defendant Anderson committed the state law offenses of assault, battery or intentional infliction of emotional distress. For instance, Illinois courts define battery as the "unauthorized touching of another person." *Luss v Village of Forest Park,* 878 N.E.2d 1193, 1206 (1st Dir. 2007). Correctional officers may obviously touch inmates for the purpose of maintaining security and custody. In addition, the Defendant is entitled to public official's immunity. "It is well-settled that pursuant to the doctrine of public official immunity, state officials and employees are fully protected from liability for acts falling within their official discretion." *Midamerica Trust Company v. Mofatt,* 511 N.E. 2d 964, 966 (Ill.App.Ct. 1987).

Furthermore, since the Plaintiff cannot establish that Defendant Anderson used excessive force, he also cannot demonstrate that Defendant Duncan failed to protect him from that use of force and that Defendant Acevedo failed to properly train correctional officers. The court notes that in his response, the Plaintiff asks to voluntarily dismiss his claim against the Warden. (Plain. Resp, 68-1, p. 3). Therefore, the court will dismiss these claims.

B. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

All of the Defendants state that the Plaintiff cannot demonstrate that they were deliberately indifferent to a serious medical condition. To establish a violation of the Eighth Amendment, the Plaintiff must pass a two prong test. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The first prong of the test requires the Plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Farmer v Brennan,* 511 U.S. 825, 834 (1994). The Seventh Circuit has acknowledge that a "serious medical need" is far from "self-defining." *Gutierrez v Peters,* 11 F3d 1364, 1370 (7th Cir. 1997). However, the court noted that the Supreme Court clearly intended to include not only conditions that are life-threatening, but also those in which denial or delay in medical care results in needless pain and suffering. *Id.*

The second prong of the Eighth Amendment test requires the Plaintiff to show that the defendants acted with deliberate indifference. *Farmer,* 511 U.S. at 828. "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42) Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The Defendants first argue that the Plaintiff did not suffer from a serious medical condition. *Pinkston v Madry*, 440 F.3d 879, 891 (7th Cir. 2006)(a split lip and a swollen cheek not a serious medical condition); *Willis v Scrogum*, 2006 WL 2597889 (C.D.Ill Sept. 8, 2006)(abrasions to forehead, face and lip not a serious medical condition). Based on the record before the court, it does not appear that the two abrasions on the Plaintiff's arm rise to the level of an objectively serious medical condition.

Even if the Plaintiff could demonstrate that he did suffer from a serious medical condition, he has not demonstrated that the Defendants were deliberately indifferent to that condition. The Plaintiff admits he never asked Defendants Anderson or Duncan for medical care, and there is no evidence the Plaintiff asked the Warden for medical care after the incident. In addition, the Plaintiff was offered an opportunity to see a crisis team member the same day as the incident, but then refused to come out of his cell. The Plaintiff never put in a medical request, but was seen by a nurse two days later. The only treatment required was antibiotic cream and bandages. There is no evidence in the record that this two day delay had any impact on the Plaintiff. *See Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996) (inmate who claims delay in treatment rose to constitutional violation "must place verifying medical evidence in the record to establish the detrimental effect of the delay.") The Defendants motion for summary judgment on the Plaintiff's claim that they were deliberately indifferent to his serious medical condition is also granted.

## V.  DEFENDANT NURSE JANIE TURNQUIST BRILL

When the Plaintiff originally filed his complaint, he named two nurses: Toni Meldrum and Nurse Jane Doe. (Comp.)  After numerous efforts, the court was informed that the Jane Doe Defendant was Janie Turnquist Brill. *See* August 25, 2009 Court Order; January 11, 2010 Text Order; January 14, 2010 Text Order; July 12, 2010 Text Order; July 14, 2010 Text Order; July 19, 2010 Text order; September 8, 2010 Text Order. All attempts to serve this individual at a work address failed and the court ordered the U.S. Marshal's to attempt service at her home residence.   To date, there is still no indication that this Defendant has been served.

In his original complaint, the Plaintiff did not clearly state how Nurse Turnquist was specifically responsible for his claims and referred to her only as the "Head Nurse." (Comp., p. 2).   Since the court has determined that the Plaintiff did not suffer from a serious medical condition, and the delay in treatment did not have any detrimental effect on the Plaintiff, the Plaintiff will not be able to demonstrate that Nurse Turnquist violated his Eighth Amendment rights.   The court will dismiss Nurse Turnquist from this lawsuit.

**IT IS THEREFORE ORDERED that:**

**1) The Defendants' motions for summary judgment are granted. [d/e 63, 66].  The Clerk of the court is directed to enter judgment in favor of all Defendants and against the Plaintiff pursuant to Fed. R. Civ. P. 56.  The case is terminated.  The parties are to bear their own costs.**

**2) If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the Plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)c.  If the Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the Plaintiff may also accumulate a strike under 28 U.S.C. 1915(g)**

**3) The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the Plaintiff's prison trust fund account if such funds are available.  If the Plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the Plaintiff's trust fund account to the clerk of court each**

**time the Plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The Plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the Plaintiff of his obligation to pay the filing fee in full.  The Plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**5)  The clerk is directed to mail a copy of this order to the Plaintiff's place of confinement, to the attention of the Trust Fund Office**

Entered this 24th day of June, 2011.

**s/James E. Shadid**

_____

JAMES E. SHADID

UNITED STATES DISTRICT JUDGE